Siobhan R. KOELSCH, Plaintiff–
Appellant,

v.

BELTONE ELECTRONICS
CORPORATION, Defendant–Appellee.

No. 94–2506.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 7, 1994.

Decided Feb. 6, 1995.

Robert J. Cozzi (argued), Thomas J. Doell, Galliani & Doell, Chicago, IL, for Siobhan R. Koelsch.

James S. Whitehead (argued), Lisa D. Freeman, Sidley & Austin, Chicago, IL, for Beltone Electronics Corp.

Before BAUER and KANNE, Circuit Judges, and SKINNER,* District Judge.

BAUER, Circuit Judge.

Siobhan Koelsch brought this suit pursuant to 42 U.S.C. § 2000(e), complaining that she was subjected to sexual harassment by her employer, Beltone Electronics. The district court granted Beltone's motion for summary judgment. We affirm.

Koelsch worked for Beltone from April 1986 to November 1991. She alleges conduct on the part of Beltone's president, Lawrence Posen, and other Beltone employees which she believes constitutes sexual harassment. While Koelsch's brief demonstrates some confusion as to what facts support her separate theories upon which liability is premised, she alleges sexual harassment pursuant to three different theories: 1) hostile work environment; 2) retaliatory discharge; and 3) post-termination retaliatory harassment. In the course of discussing these three theories, we shall relate the relevant factual allegations appropriate to each theory. Because we are reviewing the grant of summary judgment, we view the factual allegations in the light most favorable to Koelsch, the non-movant.

With respect to the claim that Beltone subjected her to a hostile work environment, Koelsch alleges two separate incidents of sexual harassment in which Posen initiated unwelcome physical contact. The first occurred in late 1988 while Posen conducted a company meeting in the executive conference room. Posen removed his shoe and rubbed his foot against Koelsch's leg. Posen continued to stroke Koelsch's leg despite her demands that he stop. Finally, Koelsch got up from the table and left the room.

The second incident occurred while Koelsch and Posen were in the midst of a plant tour in April or May of 1990. During a stop in a sound-proof room, Posen grabbed

* The Honorable Walter Jay Skinner, United States District Judge for the District of Massachusetts, is sitting by designation.

Koelsch's buttocks. Again, she voiced her displeasure and left the room.

Sometime prior to the second incident, Posen told Koelsch that he found her attractive. After the second incident, in response to Koelsch's demand for an explanation for his behavior, Posen replied he could not control himself in her presence. Also around this time, Posen asked Koelsch to accompany him for either drinks or dinner on at least two occasions. Koelsch admits that Posen ceased all physical and verbal advances by the end of May 1990.

■■■ Koelsch did not file a complaint about her treatment by Posen with the Equal Employment Opportunity Commission ("EEOC") until April 8, 1992. In Illinois, a complainant must file a complaint within three hundred days of the alleged harassment. 42 U.S.C. § 2000e–5(e); *Lorance v. AT & T Technologies, Inc.*, 827 F.2d 163, 165 (7th Cir.1987), *aff'd*, 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989). Failure to do so renders the complaint untimely. *Lorance*, 827 F.2d at 165–66. Here, Posen's conduct occurred more than three hundred days prior to Koelsch's filing of her EEOC claim. Koelsch, therefore, is precluded from bringing a sexual harassment claim of a hostile work environment based solely on Posen's pre–1991 behavior.

■■ Koelsch attempts to overcome the untimely filing of her EEOC complaint by alleging a different theory of recovery; she has alleged facts in addition to Posen's advances and argues that these facts, in conjunction with Posen's behavior, constitute a continuing violation of Title VII. *See, e.g., Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 445 (7th Cir.1994). "The continuing violation doctrine allows a plaintiff to get relief for a time-barred act by linking it with an act that is within the limitations period. For purposes of the limitations period, courts treat such a combination as one continuous act that ends within the limitations period." *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir.1992). The additional facts alleged by Koelsch fail to demonstrate the existence of a hostile work environment, even under a continuing violation theory.

In addition to her personal encounters with Posen (and she admits that there were none other than those already described), Koelsch alleges that from time to time sexually suggestive and derogatory jokes were told by Beltone employees. She points to only two specific incidents to support this claim. First, she claims that Posen carries with him a picture, purportedly of Posen as a baby. It is not, however, just any baby picture; it has been doctored such that an adult penis has been strategically superimposed in an anatomically correct manner. Koelsch, though, has never seen the picture. She "heard" about it from fellow employees and only gained confirmation from the deposition testimonies of company executives.

Koelsch claims that the second incident occurred at a company party at which two employees requested that a group of employees which included Koelsch donate pubic hairs, purportedly for a collection taken up as a birthday gift for Posen. While the record is less than clear with respect to this incident (the only reference to it is in Koelsch's Local Rule 12(n) statement), Koelsch apparently ignored the request. These are the only concrete examples of this alleged hostile work environment. Otherwise, Koelsch stands on her vague assertion that jokes of a sexual nature were told in the workplace.

■■ Koelsch's claim of a hostile work environment fails for two reasons. First, to assert a successful continuing violation claim, the facts alleged to have occurred within the three-hundred-day period must be "related closely enough" to the prior acts such that they are to be considered one ongoing violation. *Doe*, 42 F.3d at 446. In other words, there must be a sufficient nexus between Posen's advances and the sexually suggestive joking.

Koelsch cannot demonstrate such a nexus. The two specific incidents on which Koelsch relies involve Posen only at the extreme periphery; she stated that Posen purposely avoided her soon after the sound-proof booth incident. In addition, her vague assertions of joke-telling do not implicate Posen in any way. Consequently, there is no connection between Posen's advances and the joke-tell-

ing, and Koelsch's continuing violation claim fails.

■ Second, even if she could demonstrate the necessary nexus, her allegations do not reflect a hostile work environment as proscribed by the statute. To maintain a claim of a hostile work environment, Koelsch must allege conduct that was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive work environment." *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986). Isolated and innocuous incidents do not support a finding of sexual harassment. *Doe,* 42 F.3d at 440. The crude conduct Koelsch alleges is simply not severe or pervasive enough to render hers a hostile work environment.

■ Posen's conduct, while offensive, was comprised of two seemingly isolated incidents after which Posen kept his distance from Koelsch. We have previously held that similar behavior is not actionable. *See, e.g., Saxton v. American Telephone and Telegraph Co.,* 10 F.3d 526, 533–34 (7th Cir.1993) (finding that two incidents of misconduct by a supervisor involving inappropriate remarks and impermissible touching of a female employee did not create a hostile work environment); *Weiss v. Coca–Cola Bottling Co.,* 990 F.2d 333, 337 (7th Cir.1993) (finding that a male co-worker's conduct consisting of several incidents of unwanted touching, attempts to kiss, placing "I love you" signs in her work area, and asking a female employee out on dates did not create a hostile work environment). Further, even considering Posen's advances along with Koelsch's allegations of the sexually suggestive jokes and pranks to evaluate the totality of the work environment, we do not find that these incidents poisoned the workplace. The two specific incidents of jokes (only one of which even involved her) were nothing more than isolated and somewhat innocuous events, bearing no relation to each other or to Posen's improper behavior. Finally, Koelsch's amorphic allegations of an atmosphere of sexually suggestive joking carry no weight in this calculus since the record is completely barren of so much as a sliver of substantiation. The fact is, "[t]itle VII is not directed against

unpleasantness per se, but only against discrimination in the conditions of employment." *Carr v. Allison Gas Turbine Div., Gen. Motors Corp.,* 32 F.3d 1007, 1009 (7th Cir.1994). While Koelsch may have found her employment environment unpleasant, it was not hostile under the statute.

■ With respect to her discharge from Beltone in November 1991, Koelsch claims that it was done in retaliation for her report of Posen's advances. Koelsch bears the burden of establishing by a preponderance of the evidence a prima facie case of retaliation. *Dey v. Colt Constr. & Dev. Co.,* 28 F.3d 1446, 1457 (7th Cir.1994) (citations omitted). She can establish a prima facie case by showing that: 1) she engaged in a protected activity under Title VII; 2) she suffered an adverse employment action subsequent to her participation; and 3) there exists a causal connection between the adverse employment action and her participation in protected activity. *Id.* There is no dispute that Koelsch satisfied the first two elements of the prima facie case. The district court, however, found that she did not carry her burden with respect to the third, and we agree.

Koelsch points to only two pieces of evidence in support of a causal connection. First, she claims that she was given a "horrible" performance review in July 1991. Second, Koelsch claims that her supervisor at the time, Ed Braun, told her that the "handwriting [was] on the wall" and implied that she should begin seeking employment elsewhere. She claims that when she asked him if his comments had anything to do with her reporting Posen's advances, Braun answered in the affirmative.

Koelsch's bare assertions are the only evidence of the causal link between her report of alleged sexual harassment and her termination. In fact, all that Koelsch offers with respect to any of her claims is her own deposition testimony. The record contains absolutely nothing in the way of corroboration of her claims. Regarding the causal link, Koelsch could have adduced the evaluation itself, testimony from co-workers, or anything to permit the inference that she

was unfairly treated rather than the inference that we have drawn: that Koelsch is merely seeking retribution for her termination.

In contrast, Beltone offers the depositions of four employees, from the president down the chain of command to Braun. Each tells the same story: 1) Beltone's Chief Financial Officer determined that Beltone required a 7 percent reduction in force to remain profitable; 2) each department head was required to reduce his headcount by 7 percent; 3) Bill Lucas, then Assistant National Sales Manager, with input from direct reports (including Braun), determined that Koelsch's position and one other were most easily eliminated; and 4) Koelsch's report of alleged sexual harassment had absolutely nothing to do with this decision. In addition, Braun explains that Koelsch's July 1991 performance review came after her first year in a new position, that Koelsch needed to improve in certain areas, but that the review was neither negative nor positive. Moreover, Braun states that he had absolutely no part in the downsizing decision-making process and had no knowledge that Koelsch's position would be eliminated until Lucas informed Koelsch.

Even viewing the evidence in the light most favorable to Koelsch, we cannot conclude that her report of Posen's advances had anything to do with Beltone's decision to terminate her. Her performance review does not bear on the issue; Braun adequately explained that what Koelsch described as horrible was really constructive criticism designed to help her to improve her performance. Further, Braun's alleged statements amount to little more than office gossip. "Unless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of a discriminatory discharge." *McCarthy v. Kemper Life Ins. Cos.*, 924 F.2d 683, 686–87 (7th Cir.1991) (citing *Price Waterhouse v. Hopkins,* 490 U.S. 228, 277, 109 S.Ct. 1775, 1804, 104 L.Ed.2d 268 (1989) (O'Connor, J., concurring)). As a consequence, we hold that Koelsch's self-serving deposition testimony standing alone is insufficient to demonstrate a causal link between her report of

purported sexual harassment and her termination.

■■■ Finally, Koelsch claims that she was subject to further sexual harassment after her termination by Beltone. The event in question concerns a telephone conversation between Posen and Mike Stanton, a former Beltone employee then employed by the RTC Corporation, that took place in April 1992; Posen allegedly made inappropriate remarks about Koelsch to Stanton. This claim is specious.

After her termination by Beltone, Koelsch pursued employment with RTC. She was offered a position with RTC, which she turned down. In addition, Koelsch was encouraged to pursue another position at RTC, which she declined to do. Koelsch finally accepted a position at the Chicago public television station.

After all this transpired, Posen contacted Stanton regarding a matter related to Stanton's separation from Beltone. Posen had heard that Koelsch had sought a position at RTC and asked Stanton whether she was then working there. Koelsch alleges that during the course of this call, Posen said to Stanton, "Koelsch is a pretty girl, but don't tell her that or she'll sue you." She claims that by making this comment, Posen provided false information to Stanton in retaliation for her reporting Posen's advances and adversely impacted her efforts to seek employment with RTC.

■■■ While she does not explicitly say so, it is apparent that Koelsch seeks relief pursuant to 42 U.S.C. § 2000e–3(a). The law in this circuit is quite clear, however, that post-termination events are not actionable under § 2000e–3(a). *Reed v. Shepard,* 939 F.2d 484, 492 (7th Cir.1991). Koelsch has therefore failed to state a claim under Title VII with respect to Posen's alleged comment. Even if Title VII offered possible relief, Koelsch efforts to seek employment were not remotely impacted by Posen's alleged comment; she had already received several offers of employment, including one from RTC, and had accepted one by that time.

For the foregoing reasons, the district court's grant of summary judgment to Beltone is

AFFIRMED.