**Mary R. LOCKETT, Plaintiff,**

v.

**Togo D. WEST, Secretary of
the Army, Defendant.**

**Civil No. AMD 95–1337.**

United States District Court,
D. Maryland.

Dec. 21, 1995.

---

**1230**

Mary R. Lockett, Baltimore, MD, for plaintiff.

Donna C. Sanger, Asst. U.S. Atty., Baltimore, MD, for defendant.

*MEMORANDUM OPINION*

DAVIS, District Judge.

The Plaintiff, Mary R. Lockett, was a secretary with the U.S. Army Corps of Engineers ("Army Corps"), Baltimore District, until December 15, 1995. Lockett is a 50 year-old,[1] African–American female. This action, brought pursuant to Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967 as amended ("ADEA"), 29 U.S.C. § 621 et seq., has its genesis in a number of employee-employer disputes between the Plaintiff and her agency beginning in 1980. Currently before the Court are the Defendant's motion to dismiss, and the Plaintiff's motions to enjoin the Defendant from removing her from service, for the appointment of counsel, and for a new trial. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**I. The Facts**

In 1982, the Plaintiff filed a lawsuit in this Court alleging racial discrimination against the Defendant in relation to a 1981 incident with a white coworker.[2] Civ. No. JH–82–3406 (D.Md.). As a result of that incident, the Defendant suspended the coworker for two days. At that time, it was proposed that the Plaintiff should also be suspended for a two-day period due to her involvement in the incident, however, no disciplinary action was ultimately taken against her.

In 1986, before resolution of her 1982 lawsuit, the Plaintiff filed another action in this Court alleging that the Defendant had retaliated against her for bringing the 1982 lawsuit.[3] Judge Howard, who presided over both cases, ordered the cases to be consolidated. *Lockett v. Marsh,* Civ. No. JH–86–2797 (D.Md. Feb. 2, 1989) (unpublished). After a trial on the merits, the Court entered judgment in favor of the Defendant with respect to all issues.

On May 22, 1991, the Court of Appeals for the Fourth Circuit affirmed the judgment, holding that the "appeal is without merit." *Lockett v. Marsh,* No. 89–3246, 1990 WL 76531 (4th Cir. May 24, 1990) (per curiam) (unpublished). A subsequent petition for a writ of certiorari to the Supreme Court by the Plaintiff was denied. *Lockett v. Stone,* 498 U.S. 1014, 111 S.Ct. 584, 112 L.Ed.2d 589 (1990).

Then, on August 10, 1993, Lockett filed an informal complaint with the Army Corps' Equal Employment Opportunity ("EEO") counselor alleging discrimination. She complained that the decision of LTC Ralph H. Graves, Deputy District Engineer for Military Construction, to suspend her from June 30—July 4, 1993, for "failure to follow administrative procedures within the organization and discourtesy toward [her] supervisor resulting in disruption in the workplace," was "without just cause" and was the result of "a continuous pattern of racial and retaliatory

---

**1.** This was Lockett's age at the time she initiated this action.

**2.** Several individuals were also named in the Plaintiff's original complaint in that case. Pursuant to an order of the Court dated November

24, 1987, the claims against the individual defendants were dismissed.

**3.** Lockett claimed that she had been denied her union representation, and that her name was intentionally left off a list of award recipients.

acts." Pl.'s Compl. at Attach. 1. In addition, she argued that she had also received a two-day suspension from October 28–29, 1992, "without just cause." Moreover, she claimed that the 1992 suspension was a "racial and retaliatory action" as the result of her previous lawsuits against the Defendant. *Id.* Finally, she argued that the events which formed the basis of her claims in the 1982 and 1986 lawsuits violated her civil rights, and that all of the events from August 1980 to August 1993 have "created and perpetuated a hostile environment that is racially motivated . . . ." *Id.*

When the Plaintiff's informal complaint failed to produce satisfactory results, she lodged a formal complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") on September 27, 1993. It included all of the charges set forth above. The EEO officer in charge of the Plaintiff's formal complaint dismissed the two-day 1992 suspension claim pursuant to 29 C.F.R. § 1614.107(b),[4] as the Plaintiff had not filed a complaint within the prescribed 45–day time limit. Df.'s Mot. to Dismiss, Ex. 7. Furthermore, the EEO officer advised the Plaintiff that only the five-day 1993 suspension would be considered for investigation.[5] *Id.* at Ex. 8.

The Plaintiff immediately appealed the partial dismissal to the EEOC. Her basis for appeal was that the violations in question, when taken together, formed a continuing violation; therefore, according to the Plain-tiff, the limitations period for filing should have been tolled. Her appeal was rejected by the EEOC. It found that the 1992 suspension constituted a "completed personnel action," thus it "was not acceptable for investigation under the continuing violation theory." *Id.* at Ex. 11.

In its opinion denying the Plaintiff's subsequent motion for reconsideration, the EEOC explained further why dismissal of her other claims by the EEO officer was proper:

> [The Plaintiff] complains of her October 1992 and June/July 1993 suspensions. She also complains of a proposal to suspend her and the suspension of a white male employee, both of which presumably occurred about the time of her 1982 court action. Because of the amount of time that elapsed between each of these acts, we find that . . . they were isolated, rather than recurring in nature, and therefore failed to constitute a continuing violation.

*Id.* at Ex. 13.

Meanwhile, the EEOC's investigation of the 1993 suspension proceeded. An investigative file was compiled and presented to the Plaintiff for her examination.[6] She was given the option of asking for a hearing prior to the EEOC rendering its decision. She asked for a hearing, however, before it was held, the Plaintiff filed the present action. The Plaintiff subsequently filed a motion with the EEOC for dismissal of her complaint without

---

**4.** Section 1614.107(b) provides:

> The agency shall dismiss a complaint or a portion of a complaint:
>
>      \*     \*     \*     \*     \*     \*
>
> (b) That fails to comply with the applicable time limits contained in §§ 1614.105, 1614.106 and 1614.204(c), unless the agency extends the time limits in accordance with § 1614.604(c), or that raises a matter that has not been brought to the attention of a Counselor and is not like or related to a matter that has been brought to the attention of a Counselor

Section 1614.105(a)(1) provides:

> (a) Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.
>
> (1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

**5.** No mention was explicitly made of the Plaintiff's claims with respect to the 1982 and 1986 actions.

**6.** Contrary to the Defendant's assertion that this "report issued February 17, 1994, found no evidence of discrimination," Df.'s Mem. in Supp. of its Mot. to Dismiss at 4, no "findings" were made at this point. In fact, no "report" was issued; rather, on February 17, 1994, the Plaintiff was presented with a "copy of the investigative file" on her complaint. *Id.* at Ex. 9. The "investigative file does not constitute a final Army decision on [Lockett's] complaint. Its primary purpose is to develop the facts of the case and provide the basis for deciding this complaint." *Id.*

prejudice because of the filing. The EEOC granted her motion pursuant to 29 C.F.R. § 1614.107(c).[7]

Since her action commenced in this Court, the Plaintiff, who is proceeding *pro se*, has also made this Court aware that the Defendant provided her with notice of its intention to remove her from federal service for conduct unbecoming a federal employee. Pl.'s Letter to the Court dated Nov. 2, 1995. By letter dated December 18, 1995, the Plaintiff notified this Court that she has in fact been removed. She contends that the removal was in retaliation for filing the instant case as well as her prior lawsuits against the Defendant. Additional facts shall be set forth below as necessary.

## II. The Complaint

In its motion to dismiss, the Defendant argues that the Plaintiff's complaint is divisible into four separate claims:

a. A two day suspension on October 28–29, 1992, for conduct unbecoming a federal employee, creating a racially hostile environment, specific use of racially abusive language and demonstrated disrespect for a customer.

b. A proposed suspension in 1981 arising out of a dispute with a white male coworker.

c. The two-day suspension of the white male co-worker involved in the 1981 altercation.

d. The June/July, 1993 five day suspension.

Df.'s Mem. in Supp. of its Mot. to Dismiss at 2. According to the Defendant, claims (a), (b) and (c) are not properly before this Court. No argument is put forth by the Defendant with respect to claim (d). There

is no dispute that these four claims underlie the Plaintiff's complaint.

## A. The 1981 Claims

In August 1981, Lockett filed a complaint of racial discrimination with the Defendant. *Lockett v. Marsh*, Civ. No. JH–86–2792 (D.Md. Feb. 2, 1989), *aff'd, Lockett v. Marsh*, No. 89–3246, 1990 WL 76531 (4th Cir.) (per curiam), *and cert. denied sub nom., Lockett v. Stone*, 498 U.S. 1014, 111 S.Ct. 584, 112 L.Ed.2d 589 (1990). She complained that a coworker had made "numerous racial epithets and derogatory statements about blacks" to her. She "also complained of an 'unfavorable racial atmosphere since August 1980.'" The Defendant investigated her claims, and as a result it imposed the maximum sanction against the coworker—a two-day suspension—and it transferred him out of her section. As for her hostile work environment claim, the Defendant found no merit. She then sought judicial review of the Defendant's decision in this Court. After a trial on the merits, the Court held that her claim of a hostile work environment since 1980 had been seriously undermined by one of her own witnesses. In addition, quoting from *Katz v. Dole*, 709 F.2d 251, 256 (4th Cir.1983), the Court explained that an employer can escape liability for one of its employee's harassing conduct by demonstrating that it took " 'prompt remedial action reasonably calculated to end the harassment.' " Judge Howard found that the Defendant's response after learning of the Plaintiff's coworker's conduct was both "immediate and decisive" and that "[n]o further incidents were reported...."[8] Consequently, the Court denied relief as to all of the Plaintiff's claims.

The Defendant argues that the Plaintiff should be barred from litigating claims with

---

**7.** Section 1614.107(c) provides, in the relevant part:

The [EEOC] shall dismiss a complaint or a portion of a complaint:

\* \* \* \* \* \*

(c) That is the basis of a pending civil action in a United States District Court in which the complainant is a party provided that at least

180 days have passed since the filing of the administrative complaint....

**8.** As for her 1986 "reprisal" claim, the Court held that the Plaintiff had failed even to make out a *prima facie* case of discrimination. Moreover, the Court found that there were "legitimate, non-discriminatory reasons" for leaving her name off

respect to claims (b) and (c)[9]—the 1981 events, and contends that all such claims were (or should have been) litigated by the Plaintiff in the case before Judge Howard. The Plaintiff, on the other hand, contends that she "never filed a claim on Defendant's (b) and (c) items. In Case JH–86–2797, Plaintiff's claim dealt with a racial hostile environment not the fact that a two day suspension was given to the white male co-worker. The issue was that the Defendant allowed a hostile racist environment to exist...." In addition, she claims that her theory in this action was not present in the previous action before Judge Howard. She maintains that, in the instant case, her theory is the "disparate treatment in disciplinary actions against Plaintiff verses white co-workers...."

■ The Supreme Court explained the rule of res judicata in *Commissioner v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948), as follows:

> The general rule of res judicata ... provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Cromwell v. County of Sac*, 94 U.S. 351, 352 [24 L.Ed. 195] [1876].

*Id.* at 597, 68 S.Ct. at 719. *See also Nevada v. United States*, 463 U.S. 110, 129–30, 103 S.Ct. 2906, 2917–19, 77 L.Ed.2d 509 (1983); *Guinness PLC v. Ward*, 955 F.2d 875, 893–94 (4th Cir.1992); *United States v. Tatum*, 943 F.2d 370, 381 (4th Cir.1991); Restatement (Second) of Judgments § 24 cmt. b. (1982) ("That a number of different legal theories casting liability on an actor may apply to a given episode does not create ... multiple claims. This remains true although the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts."). Therefore, "[a]s a general principle, the plaintiff must assert in his first suit all the legal theories he wishes to assert, and the failure to assert them does not deprive the judgment of its effect as res judicata." 1B *Moore's Federal Practice* ¶ 0.410[1] (2d ed. 1995) (footnote omitted). *See also Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980); *Tatum*, 943 F.2d at 381.

■ Although it is not clear whether the Plaintiff's current claims with respect to the 1981 incidents are actually different than those litigated in JH–86–2797, it is patently apparent that the Plaintiff raised issues of racial discrimination with respect to the 1981 incidents in that suit. Moreover, the underlying transactions or events which constitute both claims are the same. *See Aliff v. Joy Mfg. Co.*, 914 F.2d 39 (4th Cir.1990). "If there is a substantial overlap [of the witnesses and proof between the first and second action], the second action should ordinarily be precluded." Restatement (Second) of Judgements § 24 cmt. b. The Plaintiff is, therefore, precluded from litigating claims based on the 1981 incidents.[10] *Sunnen*, 333 U.S. at 598, 68 S.Ct. at 719.[11]

### B. The 1992 Suspension

The Plaintiff's complaint also seeks redress for her 1992 suspension. The Plaintiff was

---

the award, and that her claim of denial of union representation was wholly without merit.

**9.** The Court notes that, in its Motion to Dismiss, the Defendant confuses its labels for the claims. It refers to claim (a) as claim (c) and vice-versa.

**10.** For the same reason, the Plaintiff's motion for a new trial of her 1981 and 1986 claims shall be denied. *See* Pl.'s Letter to the Court dated Dec. 18, 1995.

However, to what extent, if any, the Plaintiff might use the 1981 and 1986 incidents in an evidentiary fashion to lend support to her claims with respect to later events is not decided now. This Court notes, however, that the Restatement (Second) of Judgments § 24 cmt. f, illus. 12 (1982), suggests that the Plaintiff "may rely on acts preceding the [first] judgment insofar as these lend significance to the later acts."

**11.** The Plaintiff also contends that it was the "Defendant [which] raised issues concerning JH–82–3406 and JH–86–2797 in their plan to justify progressive discipline against Plaintiff." Regardless of the truth of this statement, there is no principle of law which would then allow the Plaintiff to escape the res judicata effect of the prior judgment.

suspended from October 28 to October 29, 1992. She did not contact her EEO officer to express her belief that this suspension was racially motivated, however, until August 2, 1993. The Defendant contends, therefore, that this suspension is not properly before the Court, because the Plaintiff failed to file a complaint regarding this incident within the time period prescribed by 29 C.F.R. § 1614.105.

Section 1614.105 sets forth the procedure for a federal civilian employee to initiate a discrimination complaint. Subsection (a)(1) states that: "An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." The Plaintiff failed to initiate contact until nearly nine months after the 1992 suspension.

■ This time period, however, is subject to equitable tolling if the Plaintiff has either made an affirmative showing of government misconduct or can successfully persuade the Court that she was unaware of the time limitation. *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990); *Nealon v. Stone*, 958 F.2d 584, 589 (4th Cir.1992); 29 C.F.R. § 1614.105(a)(2). The Plaintiff in the instant case has failed to make either showing. Moreover, as a result of the Plaintiff's previous experience filing discrimination complaints, no credible claim of lack of knowledge could plausibly be maintained. Therefore, any claim based exclusively on the 1992 suspension is barred due to the Plaintiff's failure timely to exhaust her administrative remedies. *Nealon*, 958 F.2d at 589–90.

Nevertheless, *pro se* litigants' pleadings are to be liberally construed by the Court in order to achieve "substantial justice" within the meaning of Fed.R.Civ.P. 8(f). *See generally Beaudett v. City of Hampton*, 775 F.2d 1274 (4th Cir.1985), *cert. denied*, 475 U.S. 1088, 106 S.Ct. 1475, 89 L.Ed.2d 729 (1986); *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir.) (same), *cert. denied*, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978). Reading the Plaintiff's pleadings as broadly as possible, it

appears that the Plaintiff is suggesting that the October 1992 suspension is part of a continuing violation. *See, e.g., Bazemore v. Friday*, 478 U.S. 385, 395–96, 106 S.Ct. 3000, 3006, 92 L.Ed.2d 315 (1986); *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977); *Brinkley–Obu v. Hughes Training, Inc.*, 36 F.3d 336 (4th Cir.1994). *See also Nealon*, 958 F.2d at 590 n. 4 (continuing violation theory is applicable to Title VII). The Plaintiff is also claiming that she is the victim of an abusive racial environment. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Meritor Svgs. Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). As "a hostile work environment claim usually involves a continuing violation," *Waltman v. International Paper Co.*, 875 F.2d 468, 476 (5th Cir.1989), the 1992 suspension might be available to aid the Plaintiff in proving her hostile work environment claim, even though an individual claim based on the 1992 suspension is barred.

■ The Court of Appeals for the Third Circuit recently examined a similar claim in *West v. Philadelphia Elec. Co.*, 45 F.3d 744 (3d Cir.1995). In *West*, the plaintiff brought a Title VII action alleging both racially hostile work environment and retaliation claims. At trial, in proving his hostile work environment claim, the plaintiff sought to introduce evidence of events which occurred both before and after the statutory time limit for filing a claim with the EEOC. The trial court severely limited the use of evidence from the pre-limitation period. The appellate court disagreed with the trial court's actions, holding that "[t]he statutory limitations period is not ... necessarily a bar to the admissibility of pre-statute acts which bear on the work environment and on the employer's awareness of that environment." *Id.* at 746. According to the court, "[h]ostile work environment and continuing violation claims have similar requirements of frequency or pervasiveness. There is natural affinity between the two theories." *Id.* at 755 (collecting cases). The court stopped short, however, from "adopt[ing] a *per se* rule that a properly alleged hostile work environment claim also constitutes a continuing violation."

*Id.* Thus, in order for a hostile work environment claim to meet the continuing violation theory for admissibility purposes, the plaintiff must prove that the acts alleged were not simply isolated acts of intentional discrimination, and that at least one actual violation occurred within the limitations period. *Id.* at 744–55. If such a continuing violation is established, the filing period "becomes irrelevant." *Id.* at 755. *See also Koelsch v. Beltone Elec. Corp.,* 46 F.3d 705, 707 (7th Cir.1995) (plaintiff must successfully link both the pre and post-limitations periods behavior).

In the present procedural posture of this case, it would not be proper for this Court to determine whether the 1992 suspension, assuming the Plaintiff can establish the Defendant's discriminatory intent, constitutes an isolated act of intentional discrimination or is in fact part of a pattern or practice of discrimination. Rather, such a determination should be made either at the summary judgment stage or at trial. Accordingly, this Court *tentatively* concludes that the 1992 suspension may serve as evidence of a hostile work environment. Whether it would ultimately be admitted at trial for such a purpose, however, remains to be seen.

### III. Plaintiff's Removal from Federal Service

As stated previously, the Plaintiff has sent this Court three separate letters concerning the Defendant's plans to remove the Plaintiff from federal service.[12] Pursuant to a notice dated October 13, 1995, the Defendant alerted the Plaintiff to its proposal to remove the Plaintiff from both her current position and from federal service. The basis of the proposed action was "for conduct unbecoming a Federal employee resulting in an adverse effect on morale and the maintenance of proper discipline." The Plaintiff was given a chance to reply to the notice. She subsequently asked for, and received, an extension of time in which to reply. By letter dated November 13, 1995, she filed her "Rebuttal to Notice of Proposed Removal" with the Defendant's Information Management Office.

In addition, the President of the National Federation of Federal Employees Local 639, Willie L. Glover, Jr., also filed a "Memorandum for the Record" with respect to the Notice of Proposed Removal. On November 30, 1995, the Plaintiff received notification that a final determination had been made and that she would in fact be removed from federal service effective December 15, 1995.

In Paragraph 4 of the memorandum advising her of its final decision, the Plaintiff was advised as follows:

> If you consider this removal improper or that any of your rights have been violated, you have the right to either file a grievance in accordance with the grievance procedures provided in the Negotiated Agreement between the U.S. Army Corps of Engineers, Baltimore District, and the National Federation of Federal Employees, Local 639, **or** file an appeal to the Merit Systems Protection Board, **but not both.**

Pl.'s Letter to the Court dated Dec. 18, 1995, at Attachment (emphasis in the original). Furthermore, she was advised that if she chose the former option she must file her grievance within fifteen calendar days from her receipt of the memorandum. On the other hand, if she chose to file an appeal to the Merit Systems Protection Board, she had thirty calendar days from the date of her removal to initiate the appeal. *Id.*

In her letters to this Court, the Plaintiff initially asked the Court to enjoin the Defendant from removing her from service. She claimed that the Defendant's attempt to remove her is only the latest event in the "continuing ... pattern of racial discrimination, reprisal and conspiracy to end Plaintiff's employment." Pl.'s Letter to the Court dated Nov. 3, 1993. Moreover, she claimed that if she was removed that she would "be devastated, unemployed, evicted, become homeless along with a daughter and three grandchildren." *Id.* Obviously, as the posture of this action has gone from proposed removal to actual removal, this Court need not entertain the motion for an injunction any further.

---

**12.** The Court is concerned that the Defendant may not have been provided with copies of these letters. The Plaintiff is hereby reminded that the Defendant must be provided with copies of all of her submissions to this Court.

**1236**

Nonetheless, in her December 18 letter the Plaintiff asks, *inter alia,* that the Court allow her to amend her complaint to include the "recent removal action of Plaintiff from government employment ... under the continuous theory of an on going pattern of racial discrimination driven by reprisal and conspiracy to violate Plaintiff's Civil Rights." Whether the Plaintiff can amend her complaint in this matter is an open question. The Court of Appeals for the Fourth Circuit has held that a Title VII claim for retaliation can be raised in federal court without first exhausting administrative remedies. *Nealon,* 958 F.2d at 590. However, if the Plaintiff chooses to pursue an appeal to the Merit Systems Protection Board, she may not then seek judicial intervention prior to a final determination by the Board. 5 U.S.C. § 7702(a)(2)(B). Furthermore, this Court is unaware of the terms of the Negotiated Agreement between the Defendant and the Plaintiff's union and what effect, if any, it may have on the Plaintiff's rights in this regard. Therefore, at this point, the Court is without sufficient information to make a determination on the Plaintiff's motion to amend. Thus, the motion to amend shall be held in abeyance until this Court is provided with a sufficient factual basis on which to decide this issue, including a formal response by the Defendant.

### Conclusion

In sum, the Plaintiff is barred from directly raising claims of discrimination with respect to the 1981 and 1992 incidents. Their evidentiary value with respect to the Plaintiff's hostile work environment claim, however, is not now decided. As for the Plaintiff's motion to enjoin the Defendant from proceeding with its removal process, it is now moot, and shall be denied. As to the Plaintiff's motion to amend her complaint to include the December 15, 1995, removal action as an act of retaliation, no decision is now made, but the motion shall be determined in due course. Finally, the Plaintiff's motion for appointment of counsel shall also be denied, without prejudice.