132 F.3d 37
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Elva STEWART-GROVE, Plaintiff-Appellant,
v.
ALPHA CONSTRUCTION CO., Defendant-Appellee.
 No. 96-1221.
 United States Court of Appeals, Seventh Circuit.
 Submitted Dec. 19, 1997.*
Decided Dec. 19, 1997.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division, No. 94 C 4046; Harry D. Leinenweber, Judge.
 Before FAIRCHILD, CUMMINGS, and MANION, Circuit Judges.
 
 ORDER
 
 1
 Elva Stewart-Grove filed a lawsuit under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, alleging that she was sexually harassed by two of Alpha Construction Co.'s ("Alpha") employees. Stewart-Grove was represented by counsel in the district court but appears pro se on appeal. Because we agree that Stewart-Grove has failed to demonstrate a genuine issue of material fact as to whether she was subjected to a hostile work environment or as to whether she suffered a retaliatory discharge, we affirm the judgment of the district court in favor of the defendant.
 
 
 2
 Alpha is an outdoor construction company which primarily performs tasks such as asphalt paving, sewer and water installation, and excavations. Alpha's paving season generally runs from spring to late fall each year. Rather than keep year-round employees who perform paving activities, Alpha contacts the International Operating Engineers Union, Local 150 each spring and requests a certain number of operating engineers, generally those who worked for Alpha the previous paving season. The operating engineers may choose to return to Alpha but are not obligated to, and are then laid off at the end of each paving season. Stewart-Grove worked as an operating engineer, specifically an asphalt roller, for Alpha Construction Co. ("Alpha") from 1980 to 1983 and then returned to Alpha in the spring of 1992.[1] Alpha called her back for the 1993 paving season and she returned. Stewart-Grove claims that two of Alpha's employees, a fellow asphalt roller, Winston Sawyer, and her supervisor, Walter Edwards, sexually harassed her.
 
 
 3
 In her deposition, Stewart-Grove elaborated upon the alleged instances of sexual harassment by Sawyer. She stated that upon her return to work in the spring of 1993, she was assigned by Edwards to operate the breakdown roller. Sawyer was unhappy because he had operated the breakdown roller for many years and wanted to continue doing so, but his request was denied. According to Stewart-Grove, Sawyer's dissatisfaction with his assignment led him to attempt to undermine her professional reputation.[2] He also bumped her roller when they were assigned to work as tandem breakdown roll operators on a highway paving project, and told her on one occasion that he would "kick her black ass." On another paving project in which Stewart-Grove and Sawyer worked together, she stated that he did not service his equipment appropriately and that she was forced to do so on his behalf Stewart-Grove acknowledged that she was paid for whatever overtime she incurred in doing Sawyer's work. Finally, during one conversation between Stewart-Grove and Sawyer, he stated that he believed that she should stay home with the kids and not take a man's job. On September 27, 1993, Stewart-Grove sent Alpha a letter complaining that Sawyer had bumped her roller with his roller, sexually harassed her and insulted her. Fred Marshall, Alpha's field superintendent and general manager, asked Stewart-Grove's direct supervisor, Edwards, to look into it. For the next several days, Marshall asked Stewart-Grove how things were going and she responded "fine."
 
 
 4
 At Edwards's direction, Sawyer apologized to Stewart-Grove several days later but refused to sign a written apology as she requested. Stewart-Grove met with Marshall and Bruce Arquilla, a vice-president at Alpha, on November 5, 1993, to discuss her problems with Sawyer. Although stating that she and Sawyer were not getting along, she failed to describe the specific allegations of sexual harassment by Sawyer. Stewart-Grove left work on November 18, 1993, complaining of illness and did not return. She states that her husband called in sick for her the next day but is not sure if he did the following day. Although she asserts that she was not able to work again until January or February 1994, her doctor released her to work on December 6, 1993. Alpha's paving season ended on December 8, 1993, and Stewart-Grove received unemployment compensation from December 1993 to April 1994. She was asked by Alpha to return for the 1994 paving season but did not.
 
 
 5
 On November 24, 1993, Alpha received a letter from Stewart-Grove in which she complained that her supervisor, Walter Edwards, had sexually harassed her. The incidents of harassment included Edwards asking her out to dinner a couple of times a month, asking her to wear a dress without panties, grabbing her hand and rubbing her palm in a suggestive manner, telling her to feel his crotch and stopping by her house uninvited to deliver a paycheck. Stewart-Grove claims that the sexual harassment by both Sawyer and Edwards during the 1993 paving season created a hostile working environment and that she suffered retaliatory discharge as a result of her complaints to Alpha regarding her alleged harassers.[3]
 
 
 6
 We review the grant of summary judgment de novo and view the record and all inferences drawn therefrom in the light most favorable to Stewart-Grove, the nonmoving party. Saxton v. American Tele. and Tele. Co., 10 F.3d 526, 532 (7th Cir.1993). Under Title VII, an employer is prohibited from discriminating against an employee based on sex. 42 U.S.C. § 2000e-2(a)(1). Gender discrimination includes sexual harassment. See Meritor Savings Bank, FBS v. Vinson, 477 U.S. 57, 65-66 (1986); Jansen v. Packaging Corp. of Am., 123 F.3d 490 (7th Cir.1997). Stewart-Grove alleges that the sexual harassment by Sawyer and Edwards created a hostile working environment. "To maintain a claim of a hostile work environment, [the plaintiff] must allege conduct that was 'sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive work environment.' " Koelsch v. Beltone Elec. Corp., 46 F.3d 705, 708 (7th Cir.1995) (quoting Meritor, 477 U.S. at 67)).
 
 
 7
 Accepting all of Stewart-Grove's allegations as true, Sawyer's conduct simply did not reach the severity necessary to be actionable under Title VII. See Skouby v. Prudential Ins. Co. No. 964100, slip op., at 7 (7th Cir. Nov. 26, 1997) (stating that unwelcome sexual references, drawings alluding to love and marriage, and pictures of provocatively dressed women were not enough to create a hostile work environment); Baskerville v. Culligan Int'l, Co., 50 F.3d 428, 430-31 (7th Cir.1995) (stating the several offensive gestures and comments were not sufficient to demonstrate hostile work environment); Saxton, 10 F.3d at 534 (stating that an unwanted rubbing of the plaintiff's thigh, a forced kiss and an attempted grab by the alleged harasser were not enough to create a hostile work environment). Stewart-Grove conceded in her deposition that Sawyer never made any sexual demands on her; rather, he "just gave [her] a hard time." R.25, Exh. A at 114. None of her other allegations indicate that he sexually harassed her. See Equal Employment Opportunity Commission Guidelines, 29 C.F.R. § 1604.11(a) (defining sexual harassment as "verbal or physical conduct of a sexual nature" that unreasonably interferes with the individual's work performance). Although Stewart-Grove alleges that Sawyer remarked that she should stay at home with the kids and leave the paving job to the men, this is not sufficient to demonstrate the existence of a hostile work environment. See Saxton, 10 F.3d at 533 (" 'relatively isolated' instances of non-severe misconduct will not support a hostile environment claim") (internal citation omitted).
 
 
 8
 Even assuming Sawyer's actions did create a hostile working environment, Stewart-Grove has failed to show that Alpha was negligent in dealing with her complaints. See Jansen, 123 F.3d at 493-94. After being notified of Stewart-Grove's problems with Sawyer, his supervisor had him apologize to her for his conduct. Edwards also temporarily reassigned Stewart-Grove to another position for two weeks during October. Further, at the plaintiff's request, a meeting with Alpha's management was held in which she was given the opportunity to voice her concerns. However, when asked at the meeting to elaborate on her complaints, she did not.
 
 
 9
 Stewart-Grove's allegations against Walter Edwards, her supervisor, are more serious. Even assuming that the actions alleged created a hostile working environment, Alpha may only be held liable for them if it was negligent in discovering or remedying the harassment. Perry v. Harris Chernin Inc., 126 F.3d 1010, 1013 (7th Cir.1997) ("Sometimes we need not decide whether particular conduct or comments crossed the line and were actionable .... because even if a plaintiff ... can establish a hostile environment based on her sex, it does not necessarily follow that her employer is liable"). This negligence standard, however, is based on the assumption of prompt reporting. Jansen, 123 F.3d at 502 n. 11. Stewart-Grove admitted that none of Edwards' alleged misconduct took place in front of any witnesses. She also admitted that she did not make anyone at Alpha aware of the alleged misconduct by Edwards until she sent a letter to Alpha on November 19, 1993, the day after she left early because she was ill. November 18, 1993 was Stewart-Grove's last day of the season as Bruce Arquilla, Alpha's vice-president, sent her a letter on November 19, 1993, indicating that she was being laid-off for the year because she had failed to call in sick, and they assumed she would not be returning to work.[4] The record does not support, nor does Stewart-Grove assert, that Arquilla had received Stewart-Grove's November 19 letter of complaint about Edwards prior to the lay-off.
 
 
 10
 Edwards was Stewart-Grove's supervisor; thus, the level of care exercised by Alpha in ensuring that such claims are appropriately addressed may be heightened. See Jansen, 123 F.3d at 511. However, on the record in this case, even viewing the facts in the light most favorable to Stewart-Grove, we cannot conclude that Alpha was negligent in responding to her complaints against Edwards. The record contains no evidence that Stewart-Grove complained to anyone about Edwards until November 19, 1993, the same day on which Arquilla sent the lay-off letter. Upon receiving Stewart-Grove's letter of complaint, Alpha hired a lawyer to investigate her claims, but Stewart-Grove refused to speak with him. Stewart-Grove's failure to notify her superiors at Alpha at an earlier time as well as the lack of any evidence indicating that Alpha should have known of the alleged sexual harassment by Edwards precludes a finding of negligence on Alpha's part. See Perry, 126 F.3d at 1014 (concluding that employer was not negligent in discovering or remedying the alleged sexual harassment when the plaintiff did not complain until after she quit and no evidence was proffered that the employer should have known of the harasser's conduct).
 
 
 11
 Finally, we conclude that Stewart-Grove's claim of retaliatory discharge is without merit. In order to state a prima-facie case of retaliation, Stewart-Grove must show that: "1) she engaged in protected activity under Title VII; 2) she suffered an adverse employment action subsequent to her participation; and 3) there exists a causal connection between the adverse employment action and her participation on protected activity." Koeisch, 46 F.3d at 708. First, we doubt that Stewart-Grove suffered an adverse employment action. Stewart-Grove was laid off, as were other workers, just three weeks before the end of the paving season and she received unemployment compensation, again, as did the other laid off workers. Although Alpha requested her return in the spring, she declined in favor of another position. Stewart-Grove also has failed to show that a causal connection exists between the alleged adverse employment action and the fact that she complained to Alpha about Sawyer and Edwards. Although she complained about Sawyer's conduct prior to being laid off, she did not complain about Edwards' conduct until after she was laid off. She points to no evidence which would lead us to infer that she was fired as a result of her allegations against Sawyer. She also did not file her charge with the Equal Employment Opportunity Commission until December 1, 1993. Accordingly, Stewart-Grove's claim of retaliatory discharge fails and summary judgment for the defendant is proper.
 
 
 12
 AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and record. See Fed. R.App. P. 34(a); Cir. R. 34(f)
 
 
 [1]
 Although Alpha states that Stewart-Grove worked seasonally, Stewart-Grove stated in her deposition that she worked "pretty much" year-round. R. 25, Exh. A at 14
 
 
 [2]
 For example, Stewart-Grove alleges that Sawyer falsely blamed her for mistakes on the job, that he would "do things" to her equipment so that it did not run correctly and would cause her to be yelled at by her supervisor, would use her equipment without her permission, and would take extended breaks forcing her to work more
 
 
 [3]
 Although Stewart-Grove asserted in her response to the motion for summary judgment that she also was subjected to quid pro quo sexual harassment, this has not been briefed on appeal nor does the record indicate any facts which would support such a claim
 
 
 [4]
 Alpha's assumption that she would not be returning was not unreasonable given that the last day of their paving season was December 8, 1993, and Alpha's managers had told Stewart-Grove during the November 5, 1993, meeting with her that the season was ending. Indeed, Alpha engaged in only six days of paving between November 18 and December 8, 1993